[Civ. No. 6224. First Appellate District, Division One.—February 16, 1928.]

FRANK O. PERRY, Respondent, v. A. PALADINI, INC. (a Corporation), Appellant.

Daniel W. Hone, Derby, Single & Sharp, Joseph C. Sharp, Lloyd M. Tweedt and Loring Davis for Appellant.

Harry I. Stafford, Cyril Appel and Ivores R. Dains for Respondent.

PARKER, J., *pro tem.*—Plaintiff brought action against defendants to recover for damages resulting from personal injuries sustained by him through the negligence of defendants. In the court below plaintiff recovered judgment against the defendant A. Paladini, Inc., a corporation, and from this judgment said defendant presents the appeal. Included in the review is the lower court's order denying appellant's motion for a new trial.

The question here presented centers about the liability of appellant corporation. For the purposes hereof certain facts are conceded. It is admitted that plaintiff did receive injuries as the result of the negligence of one Raymond

Zanetta in the operation of a certain automobile truck. It is conceded that plaintiff was without contributory negligence, and no claim is made that the damages awarded are excessive. It is the contention of appellant that it was not the owner of the truck driven by Zanetta, nor was it in any manner connected with or interested in the operation of the truck. Aside from attacking the sufficiency of the evidence on the issue, appellant further contends that the court below erred in its rulings on the admissibility of certain testimony offered. The evidence adduced by plaintiff in fastening a liability upon appellant may be detailed.

Alexander Paladini is and was at all of the times involved herein the president of A. Paladini, Inc., a corporation, with its main place of business at 542 Clay Street in the city and county of San Francisco. Said Alexander Paladini made application to the division of motor vehicles of California for registration of the truck in question and in the said application the name of the applicant was given as A. Paladini Co., with address at 540 Clay Street, San Francisco, which latter address was that of a mat-making concern and not in anywise connected with the Paladini Company or Paladini, Inc. In this application for registration the name of the legal owner was set forth as A. Paladini Co. Indorsed on the application and as a part thereof was the report of sale of registered dealer. This report shows that one De Maetini, a licensed motor-car dealer, on June 7, 1923, sold to A. Paladini the truck therein described. The registration certificate for 1924 showed registration in the name of A. Paladini & Co., 540 Clay Street, and in the spaces reserved therefor appears the name *A. Paladini, Inc.,* as registered owner, and A. Paladini, Inc., as legal owner, signed by J. Chicca, the acknowledged secretary of said corporation. Thereafter a policy of insurance was issued to A. Paladini Co. or to A. Paladini, Inc., covering said truck during the years 1923 and 1924. The state of the record here is as indicated, not specifying whether the insurance policy issued to Paladini Co. or Palidini, Inc.

Such are the facts set up to and including the time of the accident. After the date of the accident there appears a transfer or sale of the truck in question. The sale is evidenced, as required by the Motor Vehicle Act of this state, by indorsement of the certificate of ownership issued by the

division of motor vehicles. On the face of this certificate of ownership the signature of registered owner is "A. Paladini Inc. by J. Chicca." On the back of this certificate of ownership is shown the transfer of the truck. In the transfer designated as registered owner appears "A. Paladini Inc., by J. Chicca, secretary," and likewise is the corporation specified as legal owner. This certificate of transfer was received by the division of motor vehicles in June, 1924, some months after the date of the accident involved herein. The transfer was to E. F. Zanetta, co-defendant. In rebuttal of this evidence of ownership defendants' explanation was to the effect that neither A. Paladini, Inc., nor Alex Paladini had any interest in the truck. Alex Paladini testified that one E. F. Zanetta was and had been a personal friend of his; that Zanetta had some little financial reverses, and that he, Paladini, made a loan of a thousand dollars to him, to apply as first payment on the truck. This ended Paladini's connection with the affair. He did testify, however, that the one thousand dollars was paid by check of the corporation, and upon inquiry it was learned that the canceled check had been lost in some way, even the check stub had vanished. This witness Paladini testified further that he did not know anything about the insurance. Further, the appellant claimed that the one thousand dollars was simply as an initial payment, and that Zanetta took the car under contract to pay out the balance of the purchase price, not disclosed. There was nothing to evidence the indebtedness of Zanetta either to Paladini or to the corporation, and the books of the corporation were not produced. The dealer, from whom the car was purchased, was not called as a witness. It is fair to assume that had there been a conditional sale on contract that the dealer would have a demonstrative record thereof or at least sufficient memory of events from which to testify. It may be added that the truck referred to throughout is the truck involved in the accident which forms the basis of this action.

On this branch of the case, without further detail, we conclude that the evidence was abundantly sufficient to support a conclusion that A. Paladini, Inc., appellant, was the owner of the truck at the time of the accident.

We deem it important, for what might follow, to state further that the character of testimony adduced by appellant

on this subject was such as to warrant the jury in the belief that the same was sham and evasive and unworthy of belief.

Appellant in its further argument makes the concession that the ownership is sufficiently shown, but that mere ownership of the truck is not sufficient to fasten liability upon the owner. It is argued that proof of ownership is but *prima facie* that at the time in question the truck was employed in the business of the owner, and that when this *prima facie* evidence is controverted the one seeking to fasten the liability through mere proof of ownership must go further and show additional facts sufficient to prove his case aside from the presumption. Before discussing the rule of law invoked we will narrate the additional facts going to establish liability.

A. Paladini, Inc., is a corporation engaged in the handling and distribution of fresh fish as a wholesaler. It has a place of business in San Francisco and also in Monterey, between which said places is maintained a generally traveled and much used highway or boulevard. The driver of the truck at the time of the accident was one Raymond Zanetta, who at a time previous to the date of the accident was in the employ of A. Paladini, Inc., and who for ten months preceding the trial and at the time of the trial was in the employ of said concern. At the time of the accident the truck was loaded with fish crates or fish boxes, and the scene of the accident was on the highway between San Francisco and Monterey. At the time of the accident—conceding it to be a point of time sufficiently remote to exclude it being a part of the *res gestae*—the driver of the truck stated he was hauling fish for Paladini and gave to a public officer the card of Paladini.

Summarizing the evidence of plaintiff, we have these facts: The truck of appellant, engaged in a business similar to that of the appellant, at a place where the appellant would usually be engaged in the conduct of his business, and being operated by one who previous to the accident and subsequent thereto was in the employ of appellant. It will thus be noted that plaintiff went much beyond the establishing of a *prima facie* case resting upon mere ownership.

As against this, appellant sought to show the loan transaction negativing ownership. Then he produced a brother of the truck driver, and this witness testified that he was

engaged in a general trucking business hauling fish from Monterey to San Francisco, and that in his business he served many wholesale fish dealers, including Paladini; that he was the sole owner of the truck involved and that the driver was in his employ. This witness was named Ernest Zanetta. Appellant produced a number of dealers who testified that Ernest Zanetta had hauled fish for them at various times, and had presented bills in his own name therefor. Ernest Zanetta also testified that neither Paladini nor A. Paladini, Inc., had any interest in his business or in the truck, and that the driver of the truck was employed by, under the direction of and solely engaged in the business conducted by Ernest Zanetta. He produced no evidence of wage payments and no evidence of contract payments upon the truck. The driver likewise testified that he was in the employ of Ernest Zanetta.

Conceding that Ernest Zanetta had conducted or even was conducting an independent trucking business, we have simply his statement and the statement of Paladini and the driver, both interested parties, that he, Ernest Zanetta, was the owner of the truck involved and the employer of the driver. We are satisfied that the evidence was sufficient to create a real conflict sufficient to submit both questions of ownership and agency to the jury, and we will not disturb the conclusion reached on these issues.

It suggests itself easily that the claims of appellant could have been proved by competent evidence readily available. For instance, the motor-car dealer who first sold the truck would have some evidence of the later payments if the sale had been one on deferred payments. The records of A. Paladini, Inc., in the usual course of business would have shown the charge to Ernest Zanetta on the loan as testified to by Paladini. The records of the insurance company would have shown the application for insurance and the circumstances surrounding the policy, which said policy, appellant argues in his brief, would have been void "if the interest of the subscriber in the property be other than unconditional and sole ownership." As a matter of giving weight to testimony it is a cardinal rule that, when it is shown that evidence which would explain a transaction or show its true nature is in the possession of or available to a party, and he fails or neglects to produce it, it is pre-

sumed that such evidence if produced would be adverse to his contention. Sufficient has been stated to apply such principles of law as are contended for.

Appellant's chief contention is, as indicated, the insufficiency of the evidence. Much of the briefs filed is on the question as to the effect of the inferences drawn from proof of ownership. We are called upon to decide this one point, namely, "Is the inference of agency as drawn from the fact of ownership sufficient in itself to create a conflict in the testimony, and prevail as against evidence to the contrary when such evidence produced remains uncontradicted by direct evidence."

It would serve no useful purpose to attempt herein to outline all of the authority on the subject. The terms "presumption," "inference," and "circumstance" have been used interchangeably throughout almost all of the decisions, and it may be safely said that a state of apparent confusion exists. As indicated before, the record in this case renders it unnecessary for us to speculate upon what would have been the effect if plaintiff had rested upon the mere proof of ownership. In the case of *Randolph* v. *Hunt*, 41 Cal. App. 741 [183 Pac. 361], the entire subject was reviewed. The conclusion reached in that case was as follows: "It is not disputed that from ownership of the automobile the presumption arises that it was being used for appellant's purpose (citing authorities). But it is claimed that this presumption was no longer of any effect after the introduction of testimony of witnesses to the contrary, and that the jury could not legally be influenced by it in finding a verdict. It amounts to the contention that said presumption would be sufficient to support the verdict if there was no evidence to the contrary, but it is insufficient in the presence of adverse evidence. We cannot understand how a presumption can be thus changed in its character as evidence. If it is legally sufficient to support a verdict, it must be legally sufficient to create a conflict in evidence."

In the cited case the court said, referring to the testimony offered by defendant there to overcome the inference arising from proof of ownership, "It cannot be said that the jury was bound to accept the statement of said witness as true. Being the exclusive judges of the weight of the evidence and the credibility of the witnesses, if the testimony did not

carry conviction to their minds they had the legal right to reject it. We must assume that they did not believe the story, and we cannot say, in the absence of any showing to the contrary, that the jury acted arbitrarily or otherwise than in good faith and with an honest purpose. We could not be justified by the record in branding the statement of these witnesses as false, although there are certain circumstances that tend somewhat to discredit it, but we are not in a position to interfere with the jury's discretion in that particular.''

The supreme court, in acting upon an application to have the matter transferred to that tribunal after determination by the district court, used this very significant language: ''In denying a rehearing of this case we limit our approval on the question of liability of the owner to the reason assigned in the opinion and summarized as follows: 'The question of the alleged agreement with Triggs was submitted to the jury; it was resolved against appellant on conflicting evidence, and this finding cannot be reviewed by this court.' ''

Explanatory, the facts of that case were that the owner of the car sought to show by the testimony of himself and one Triggs, that the car had been loaned to Triggs, and that the owner had not the custody or control thereof at the time of the accident. But the only testimony on the subject was that of the owner of the car and his son and Triggs, all of whom testified that Triggs had borrowed the car and was in complete charge thereof. And the trial court instructed the jury that, whether or not such agreement of loan or arrangement had been made was a question for the jury to decide.

So in the case at bar we conclude that whether or not the evidence of appellant here was to be taken as a substantial controversion of the inference of agency following ownership was a question for the jury to decide. Much has been said by the courts on the effect of the inferences flowing from proof of ownership. Without further extended quotation of authorities, the rule is succinctly stated by Mr. Justice Richards of the supreme court in the case of *Ransford* v. *Ainsworth*, 196 Cal. 281 [237 Pac. 748], as follows: ''There is a proposition of law which is conceded to be correct by the briefs and arguments of appellant herein. It is

that an inference arises from the foregoing facts (showing ownership by wife) that the husband was the agent of the wife in the driving and operation of her car at the time of said collision, and that such evidence would be sufficient *prima facie* to support the verdict in the absence of substantial proof sufficient to destroy such inference."

The doctrine thus announced clearly is to the effect that the *prima facie* case made will stand in the absence of substantial proof to the contrary. And, as a mere matter of expression the term "substantial" includes the terms "credible" and "trustworthy." But who shall say just which evidence is trustworthy and credible? Throughout the procedure of trial and review the accepted rule is that the questions of weight of evidence and credibility of witnesses are primarily for the jury, and next for the trial judge. Where, as here, both the jury and the trial judge refuse to credit the witnesses or accept as true the evidence adduced, surely without positive showing this court cannot hold that error has been committed and injustice worked on appellant. As we have stated before, and without going into minute details, the jury did have the right to discredit much testimony adduced, and the jury likewise had before them the manifest interest of the various witnesses.

In the case of *Ferris* v. *Sterling*, 214 N. Y. 249 [Ann. Cas. 1916D, 1161, 108 N. E. 406], we find this language: "The property being proved to belong to the defendant a presumption arises that it was in use for his benefit and on his own account. This presumption was not destroyed as a matter of law by the testimony for the defendant. Even though his explanation of the use of the car would absolve him if credited, the question whether it should be credited was one of fact for the jury. *The jury may have thought that witnesses who would falsely disclaim ownership of a car would falsely disclaim responsibility for its management.* These and like considerations were for them."

Elementarily, there are two classes of evidence, direct and indirect, and our code recognizes both. The law, founded upon human experience, has noted the frequent concurrence of certain facts and the conclusions usually resulting therefrom. From this experience the law has established certain rules defining what are presumptions and what are inferences. These terms are often used inter-

changeably and with little apparent distinction. Indeed, given a premise from which a certain conclusion flows, and that conclusion being well within human experience as a natural and logical conclusion, it makes little difference whether it be called a presumption or an inference. ■ Presumptions are recognized as inferences but of somewhat greater strength by reason of being deductions which the law directs or draws itself. ■ But, in the case of a disputable presumption, all that the law says or intends is that in the absence of contradiction it is satisfactory (Code Civ. Proc., sec. 1963). It says the same thing about the inference to be drawn from ownership of an automobile. In concluding this phase of the instant case we may say that if we are to hold that the showing here was not sufficient as a matter of law, and that a mere denial by defendant is all that was required to overthrow plaintiff's case, then it is apparent that for years past grave injustice has resulted from the law, because upon facts and circumstances far less convincing on the question in issue many unfortunates have served long prison sentences and some even have suffered the extreme penalty.

■ The next claim of error upon which appellant urges the reversal of the judgment is the action of the court in admitting testimony showing that the defendant A. Paladini Co. was insured. There would seem at first blush some merit to this claim, but upon analysis the seeming error fades away. It is true that as a general proposition in an action of this sort it is not permitted to show that the defendant is insured against liability (*Roche* v. *Llewellyn Iron Works,* 140 Cal. 576 [74 Pac. 147]). The same case, however, recognizes the law to be that the rule is not of invariable application, and approves the holding in *Barg* v. *Bousefield,* 65 Minn. 355 [68 N. W. 45], to the effect that under certain conditions it is proper to show insurance.

■ However, in the instant case there was no effort to show that the defendant was insured against public or any other liability. The whole extent of the testimony offered was to show that A. Paladini & Co. or A. Paladini, Inc., had procured a policy of insurance upon the truck in question. This evidence was offered to prove ownership and was properly received. Defendant had denied that it was the owner of the truck and had denied knowing anything about

an insurance policy, and this testimony had been given by the president, Alex Paladini. It was competent to show every act of ownership on the part of defendant or its officers, and if results flowed therefrom not anticipated this is appellant's misfortune brought about by its own misconduct. It has been a well-established principle of law for many centuries that upon a trial for a particular crime evidence which shows or tends to show the commission of another and distinct crime by a defendant is inadmissible, and it is prejudicial error to let it go before the jury. This rule has its exceptions, and where it appears that evidence of the commission of such other crime has a direct and logical bearing upon the guilt of the accused as to the crime with which he is on trial evidence of the commission of such other offense is admissible (*People* v. *Argentos,* 156 Cal. 725 [106 Pac. 65]). By analogy the rule as to the instant case should be that while it is improper and highly prejudicial to allow evidence to be introduced showing a defendant is insured against liability in case of accident, yet evidence of general insurance of certain property by a defendant who denies ownership does have a direct and logical bearing upon that particular question and is therefore admissible. The plaintiff could have gone much further than he did. He would have been permitted upon his insistence to offer in evidence the application for insurance if the same had been executed by defendant or any of its authorized officers. Plaintiff, mindful of the defendant's claim of error, went no further than to show the fact of insurance. Ordinarily, men do not insure the property of others; and, likewise, insurance companies do not usually issue policies covering property to one having no interest therein. And going still further, insurance companies do not roam around the byways issuing policies at their own instance and without the application of anyone. And it may be further noted here that when the evidence was offered plaintiff expressly restricted the offer as ''a circumstance proving ownership.''

Lastly, appellant contends that the judgment must be reversed because of error in the admission in evidence of certain statements made by the driver of the truck at or about the time of the accident.

In discussing this claim we are confined to the record before us. This appeal is presented under the alternative

method, and in a supplement to its opening brief plaintiff presents such portions of the record as he desires to call to the attention of this court. The appellant in his brief merely sets up that error was committed in receiving the evidence, but does not point out what the evidence was. The supplement filed with the opening brief contains the evidence which is sought to be called to our attention, but no references are made to such supplement in the briefs of appellant. However, we have reviewed the supplement and will determine the point as it is urged.

The specific error alleged by appellant is thus put: "The court erred in admitting the pretended hearsay statement supposed to have been made by the driver after the accident to the effect that he was hauling fish for Paladini."

At the trial while the plaintiff was on the stand he testified that immediately after the accident he was taken to a doctor for treatment, and that upon his return to the scene of the accident there still remained quite a few people, including the driver of the truck. The driver was talking to one Schwarz, a deputy constable, who was making some inquiries into the accident. Plaintiff testified then as follows: "They asked him what he was doing. He said he was hauling fish for Paladini and he had some fish boxes on his wagon at the time." Then followed this: "Mr. Bradley (counsel for appellant): We ask that that be stricken in view of our objection and for the reason that the driver has not been identified as the agent.

"The Court: If the matter is not connected up, Mr. Bradley, and it is not shown that he was in the employ of the company and it was not in the course of employment, then the court will grant a motion to strike out the evidence, but a party cannot put in their entire case all at one time. If this man was an employee of the company, then his statement would be competent.

"Mr. Bradley: Otherwise not?

"The Court: Otherwise not."

When Schwarz, the deputy constable, was called this question was asked him:

"Q. Did you speak to the driver? A. Yes.

"Q. What did you say to him?

"Mr. Bradley: Objected to as not binding on the defendant Paladini Co. unless it is shown the driver was in some way connected with them.

"The Court: Overruled."

This much of the record indicates that it was the theory of the case below that if agency were shown the statements were admissible. We do not concede this to be a correct statement of the law, but if a case is tried before a court on a certain definite theory we will review the record accordingly. As indicated hereinbefore, we have concluded that the fact of agency was sufficiently shown.

The driver of the truck was called as a witness and denied that he was in the employ of Paladini, Inc. He was not interrogated as to the statement particularly, but testified that he did not recall talking to anyone except some person who claimed to be a roadmaster. Another witness for defendant gave testimony that the driver did not have conversation with anyone excepting the roadmaster. When the driver denied that he was employed by Paladini it certainly would have been permissible to ask him on cross-examination regarding any statements he may have made contrary to his testimony. While not exactly in point, the case of *Williams* v. *Kidd,* 170 Cal., at page 653 [Ann. Cas. 1916E, 703, 151 Pac. 1], applies to the instant case. Following the doctrine of that case plaintiff here could and did make out his case without the statements of the driver. Plaintiff was practically compelled to call the driver as a witness to prove the nature of his employment and the identity of his employer. The statements of the driver, if improperly admitted on the trial as original and independent evidence, still, as by adopting a different order of proof they must unquestionably be admitted as impeaching evidence on another trial, the mere fact that the trial court in admitting them did not fully recognize their true character as impeaching evidence could work no prejudicial injury to appellant. We may concede and readily do that the statement of the driver was no part of the *res gestae,* and no claim of admissibility could be urged on that ground (*Willard* v. *Valley Gas & Fuel Co.,* 171 Cal. 9 [151 Pac. 286]; *Froeming* v. *Stockton Elec. R. R. Co.,* 171 Cal. 401 [Ann. Cas. 1918B, 408, 153 Pac. 712]). However, the statement in no way bore upon the facts of the accident itself,

and in nowise reflected itself upon the facts going to disclose negligence on the part of the driver. It had no bearing whatever upon the question of negligence. Its sole .effect, if any, was to establish some relationship of agency. It was defendant's claim throughout the trial that this truck often did haul fish for Paladini as well as other people; that it was used in the general trucking business by Ernest F. Zanetta, and the fact that at the time of the accident it might have had a load for Paladini was as consistent with defendant's claim as it was in support of plaintiff's contention. The undisputed evidence also discloses that at the time of the occurrence the registration card showing Paladini Co. to be the legal owner of the truck was exhibited in the usual place thereon. Taking all of these facts together, we see no serious harm resulting to appellant from the evidence in view of all the facts of the case.

In conclusion, we think that the case was fully and fairly tried and the verdict amply supported by facts.

With reference to the case of this appellant we feel in a measure that we can resort to those provisions of law which trial judges are directed to give to juries by section 2061 of the Code of Civil Procedure, and particularly subdivisions 6 and 7 thereof, which are (6) that evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce, etc.; (7) that if weak or less satisfactory evidence is offered when it appears that stronger or more satisfactory was within the power of the party, the evidence offered should be viewed with distrust.

Upon denying a motion for judgment notwithstanding the verdict, the learned trial judge, who had observed all of the witnesses and heard the evidence, stated, "The court feels that it is a justified verdict." In this, too, we concur; and thus agreeing, and from the record before us, we hold that if the error assigned should be deemed more grievous than we admit, nevertheless the result of the trial would have been no different in the absence of such error. ▇▇▇ We are satisfied that giving appellant's claims their fullest strength still the result gives not the slightest suspicion of a miscarriage of justice. The constitution (art. VI, sec.

4½) limits our power, therefore, to do other than affirm the judgment.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 16, 1928.

All the Justices concurred.